UNITED STATES

v.

**Paxton F. HILL, 451 37 9151 Seaman Recruit (E–1), U.S. Navy.**

**NMCM 87 3540.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 28 July 1987.

Decided 27 June 1988.

LCDR J.J. Quigley, JAGC, USN, Appellate Defense Counsel.

Lt. Gregory J. O'Brien, JAGC, USNR, Appellate Defense Counsel.

Lt. Maureen T. Koetz, JAGC, USNR, Appellate Government Counsel.

Before BYRNE, C.J., and COUGHLIN and RUBENS, Appellate Military Judges.

BYRNE, Chief Judge:

Seaman Recruit Hill was assigned as a mess cook aboard his ship, the USS BENJAMIN STODDERT. At 0630, on 15 June 1987, he was required to report to the enlisted dining facility to commence his routine daily assignment. He also had an obligation, pursuant to an order issued on either 5 or 6 June 1987,[1] to report for a restricted men's muster at the same time and date he was to report for mess cooking —at 0630, 15 June 1987, but at a different place.[2] Seaman Recruit Hill neither reported for mess cooking nor did he make his restricted men's muster, but instead was in his "rack" in his berthing compartment.

A subparagraph in Seaman Recruit Hill's restriction order states:

If for "ANY REASON" (medical/watch/etc) you can not make a muster, "YOU" must notify the CMAA [Chief Master–At–Arms] or DMAA [Duty Master–At–Arms] prior to the muster, otherwise you will be carried as UA.

Paragraph 6, Appellate Exhibit III.

Seaman Recruit Hill was charged with two violations of the Uniform Code of Military/Justice (UCMJ) as a result of this incident. One specification alleged an Article 86(1), UCMJ, 10 U.S.C. § 886(1), violation in that he "did, on or about 0630, 15 June 1987, without authority, fail to go at the time prescribed to his appointed place of duty, to wit: USS BENJAMIN STODDERT Enlisted Dining Facility." Another

specification alleged he committed an Article 92, UCMJ, 10 U.S.C. § 892, orders violation in that he,

having knowledge of a lawful order issued by Commanding Officer, USS BENJAMIN STODDERT (DDG 22), to make restricted man's muster for 45 days, an order which it was his duty to obey, did, onboard USS BENJAMIN STODDERT, on or about 0630, 15 June 1987, fail to obey the same.

The accused, in accordance with his pleas, was found guilty of both specifications.[3]

On appeal, one of Seaman Recruit Hill's assertions is that, because the military judge did not resolve which duty he was obliged to follow (i.e., to muster or go to his regularly assigned duties at the Enlisted Dining Facility), the pleas to both specifications should be rejected as improvident. We disagree and conclude that, under the circumstances of this case, the accused's guilty pleas to both offenses at issue are provident, but that they are multiplicious for sentencing.

In United States v. Patton, 41 C.M. R. 572, 573 (ACMR 1969), the Army Court of Military Review noted that a "criminal prosecution for disobedience of an order cannot be based upon a subordinate's election to obey one of two conflicting orders when simultaneous compliance with both orders is impossible." In this case, however, unlike Patton, there is no simultaneous compliance situation because a lawful order, enforcing orders of the accused's commanding officer, takes precedence over a serviceman's responsibility to report for regularly assigned duties.[4]

---

1. The restriction was imposed as a punishment at Captain's Mast held on 5 June 1987.

2. We disagree with appellant's suggestion that the record of trial does not reveal whether the two duty stations were on different parts of the ship. We judicially note that the Enlisted Dining Facility and the "Quarterdeck/01 Level Aft" are two distinct areas of a ship. Compare R. 17 and Appellate Exhibit III.

3. The military judge properly treated the orders offense as a breach of restriction for punishment purposes. United States v. Hofmiller, 12 U.S.C.M.A. 479, 31 C.M.R. 65 (1961); see also

United States v. Laminack, 8 C.M.R. 660 (AFBR 1953), and cases cited therein.

4. In United States v. McCoy, 13 C.M.R. 285, 294 (ABR 1953), it was held that an order by an officer in command (i.e., company commander) may be superseded by the subsequent order of his superior in command (i.e., his battalion commander) and compliance with that subsequent order "cannot be made the basis for an allegation of disobedience...." The Discussion in the Manual for Courts–Martial, United States, 1984 (MCM), cites as an example of a defense which requires an honest and reasonable belief to establish a mistake of fact "belief that the

As a practical matter, no conflict would have arisen if the appellant had properly notified the CMAA or DMAA of the situation prior to the muster, as the restriction order had required. If the CMAA or DMAA had not excused the accused from the muster, he could have gone to the muster at 0630—which we presume would only have taken a few minutes—and then could have proceeded to his regularly assigned duties. In such a situation, he would have had a defense to a charge of failing to go to his appointed place of duty (for the few minutes involved in mustering [5]), as the restriction order superseded his obligation to report to his regularly assigned duties at the Enlisted Dining Facility at precisely 0630 on 15 June 1987.[6]

 Further, although unclear from the record, the order to report for muster vis-a-vis reporting on time to his regularly assigned duties may have been an intervening order. It is customary practice in the military that when a later lawful order contradicts or requires disobedience of a prior lawful order, the later order governs. Compliance with such a later order would be a defense to a charge of violation of the initial order.[7]

In choosing to remain in his rack, Seaman Recruit Hill violated both of his separate and distinct responsibilities. Further, he freely admitted, during the providence inquiry, his guilt of both offenses.[8]

◼ As the offenses arose out of the same act or transaction, however, the military judge concluded, and we agree, that they are multiplicious for sentencing. R. 21; *United States v. Franklin,* 12 U.S.C.M.A. 477, 31 C.M.R. 63 (1961); R.C.M. 1003(c)(1)(C), Discussion.

The findings and sentence, as approved on review below, are affirmed.

Judge COUGHLIN and Judge RUBENS concur.

---

accused charged with unauthorized absence had permission to go...." Discussion, Rule for Courts–Martial 916(j). In *United States v. Demings,* 22 U.S.C.M.A. 483, 47 C.M.R. 732 (1973), the Court of Military Appeals implicitly appeared to conclude that the granting of permission to depart a class to go on official business is a defense to an unauthorized absence charge. Court–Martial Orders, Navy Department 1938—1951, CMO 6–1949, at 144 states: "When an order is, in effect, immediately revoked by the person who gave it, an accused should not be convicted of disobeying such order." *See also* R.C.M. 916(d), MCM.

5. Evidence that an accused was given permission to go to sick call was not inconsistent with a morning report stating he was an unauthorized absentee because "the permission was specifically limited to the stated purpose." *United States v. Sanches,* 2 C.M.R. 278 (ABR 1951).

6. *See* n. 4, *supra.*

7. *See United States v. Pushee,* 49 C.M.R. 148 (ACMR 1974); *United States v. Davis,* 22 U.S.C.M.A. 241, 46 C.M.R. 241 (1973); and *United States v. Thrasher,* 4 C.M.R. 350 (ABR 1952). *See also United States v. Calpito,* 18 U.S.C.M.A. 450, 40 C.M.R. 162 (1969). *Cf., Winthrop's Military Law and Precedents* 642 (2d ed. 1920). "In

defence the accused ... may prove his absence was not unauthorized: and it will be a good defence that he was absent in good faith by the permission of a superior,...."

8. In a recent opinion, *United States v. Esslinger,* 26 M.J. 659 (NMCMR 1988), this Court upheld a finding of guilt for wrongful use of marijuana in Atlanta, Georgia, on a date the accused was confined in the San Diego brig. The accused admitted that he used marijuana sometime near the date alleged. This Court stated that:

[W]hile the military judge's findings by exceptions and substitutions as to place appear to create a factual impossibility on the face of the charge sheet, the appellant's answers during providency reflect a complete understanding and knowledge of his offense and also placed him on notice of the underlying factual impossibility if he narrowly construed the pleadings. The appellant admitted to his wrongful use of marijuana while he was an unauthorized absentee, and regardless of the exact date of the usage, the period of his acknowledged wrongful use is closely related to the date of the offense pled. He did not object to the date or place pled; he persisted in his plea, and accepted without objection the military judge's *sua sponte* findings by exceptions and substitutions.